■　　THE PEOPLE OF THE STATE OF NEW YORK ex rel. EMANUEL TEITLER, Appellant, v. SIDNEY HAIRONSON et al., Respondents.— In a habeas corpus

proceeding to obtain custody of an infant, Nancy Davida Greenberg, relator appeals from two orders of the Family Court, Nassau County, the first entered December 30, 1969 after a hearing, granting custody of the child to respondents Haironson, and the second entered June 2, 1971 after a hearing, continuing custody of the child with said respondents. Orders affirmed, without costs. The Family Court determined properly the custody of the infant after extensive hearings and abundant evidence. The litigation is between nonparents and nonrelatives of the child. In such a setting the court acts as *parens patriae,* considering the best interests of the child to decide in whose custody the child should be reared (*Finlay* v. *Finlay,* 240 N. Y. 429, 433–434; see, generally, Foster and Freed, Child Custody, 39 N. Y. U. L. Rev. 423, 435 *et seq.*; cf. anno., 30 ALR 3d 290, 305–307, 366–372). Assuming that relator stood *in loco parentis* to the child, this should not in itself endow him with a superior right to custody. Instead, his relationship to the child, along with his past history of care and support of her, was a factor to be weighed by the court together with all other factors touching the welfare of the child. Here there was medical and psychiatric evidence before the court that relator would not be able to care for the child in a manner conducive to her best interests. In contrast, there was evidence before the court that the child was being properly reared by respondents Haironson. On this record, we think that the discretion of the Family Court was correctly exercised, particularly in view of the fact that the Judges presiding at the hearings had the opportunity to see and hear the parties. We do not believe that *Wener* v. *Wener* (59 Misc 2d 957, affd. 35 A D 2d 50) dictates that relator is entitled to custody as against respondents. As the opinion of Presiding Justice Christ in this court makes clear, the issue in *Wener* was whether a husband might be required to support a child whom he had neither fathered nor adopted; and the husband was held to a duty of support on the " dual foundation of an implied contract to support the child and equitable estoppel" (*Wener* v. *Wener, supra,* p. 53). No question of custody arose in the case, as it was admitted that the wife had custody of the child. Rabin, P. J., Hopkins and Brennan, JJ., concur; Martuscello, J., dissents and votes to reverse the orders and grant custody of the infant to relator, with the following memorandum, in which Munder, J., concurs: In our opinion, the Family Court improperly construed this proceeding as a battle between parties of equal legal standing for the custody of the infant child to be governed by the " best interests " of the child; and thereby was in error in awarding custody of the child to respondents Haironson. The infant was turned over by the natural mother to relator and his late wife on February 3, 1965, the third day after her birth, with a view toward adoption. Even though the infant was never legally adopted, relator raised this child as his own daughter in his household and voluntarily assumed all obligations and responsibilities of a father and supporter of the child from February 3, 1965, the third day after her birth, until January 12, 1969. On the latter day, he entrusted the temporary care and custody of the child to respondents, because of the hospitalization of his wife. During his wife's sickness, which culminated in her death on April 25, 1969, relator, who has subsequently remarried, visited the child and continued to contribute to her support. Under these circumstances, he stood *in loco parentis* to the child and is entitled to the custody of the child as against third persons (67 C. J. S., Parent and Child, §§ 71, 73; see *Wener* v. *Wener,* 59 Misc 2d 957, affd. 35 A D 2d 50). Consequently, custody of the child should remain with him, absent any proof that the child is neglected and he is an unfit parent. Apart from a temporary mood of depression suffered by him during his late wife's illness and for a short period immediately after her death, there is no competent credible

evidence in the record to indicate that the child has been neglected by relator in the past or will be in any danger of neglect should she return to him (Family Ct. Act, former § 312, as amd. by § 1012, subd. [f]). On the contrary, all of the medical evidence in the record and the Family Court's own private observation of the child indicate that she is physically and emotionally well and that this condition can be traced to the upbringing she received in relator's household during the first four years of her life. Moreover, assuming *arguendo* that the "best interests of the child" is the governing principle herein, we are still of the opinion that custody of the child should be awarded to relator, in view of the years of successful guidance provided by him to the infant virtually from her date of birth until she was almost four years old and in view of respondents' advanced age in relation to the infant.