Edward S. Conway, J.
This is a reargument of a habeas corpus proceeding based upon the ground that personal service of the process of the High Court of Justice of England has now been made upon respondent Susan Honor Ratnoff with due notice and opportunity to be heard on an order of custody, and that said respondent, having defaulted and failed to appear, an order was made by the High Court of Justice on September 17, 1973, relating to the custody of the infant, Penelope Ann *879 Ratnoff, which order should be enforced by this court on the basis of comity and on the basis of the best interest and welfare of the said infant.
It is conceded by the petitioners that on March 21, 1973 petitioner Ratnoff and respondent Ratnoff became reconciled and terms of reconciliation were entered into by them and pursuant thereto the wardship proceedings' theretofore were terminated. It is also conceded that on May 31, 1973 respondent again left petitioner, taking the infant Penelope with her, and came to the United States with the infant Penelope and now resides at Germantown in Columbia County, New York.
On June 7, 1973, after becoming apprised that respondent Ratnoff had taken the infant Penelope out of the United Kingdom and to New York, petitioner Ratnoff obtained an originating summons in the High Court of Justice, Family Division, Principal Registry in England, which summons was filed on that day and which filing, under English law, automatically made the infant Penelope Ratnoff a ward of the High Court of Justice. Pursuant to the rules of the High Court, application was made for confirmation of the wardship, which was granted, and pursuant to which an order was dated and entered June 12,1973 which confirmed the continuing wardship of the Official Solicitor and made the minor a defendant in the proceedings and ordered the respondent to return the minor Penelope to the jurisdiction of the court and into the care and control of the Official Solicitor.
This court, in its original opinion herein (74 Misc 2d 693) denied the writ of habeas corpus following a hearing on June 19, 1973 on the ground that the English court had not obtained personal jurisdiction over the respondent Susan Honor Ratnoff by any authorized method of service on the authority of the decision of the Supreme Court of the United States in May v. Anderson (345 U. S. 528). This court therefore denied to accord comity to the order of the High Court of Justice of England.
This court signed an order upon such decision on July 17,1973 which has not yet been entered.
On July 16, 1973, the Hon. Sir Henry Brandon, one of the Justices of the High Court of Justice of England, sitting at the Royal Courts of Justice, Strand, London, on the application of petitioner, made an order granting leave to serve by personal service outside the jurisdiction, the originating summons herein upon respondent Susan Honor Ratnoff, together with the three orders of Mr. Justice Faulks, dated the 7th, 8th and 12th days-of June, 1973, which summons and orders are the same ones referred to in the original petition for a writ of habeas corpus *880 herein, and ordering that the time for appearance be limited to 21 days from the date of service.
On August 2, 1973, a Deputy Sheriff of Columbia County made personal service upon respondent Ratnoff at Germantown, New York, of such summons as amended June 15, 1973, and of such orders.
Respondent Ratnoff not having appeared or moved in the proceeding in the High Court of Justice, on ¡September 17,1973, Mr. Justice Reeve in the High Court of Justice, Family Division, made an order in which it was ordered that said minor, Penelope Ann Ratnoff, remain in the care and control of the petitioner Ratnoff until further order; that Susan Honor Ratnoff forthwith return the said minor to the care and custody of the petitioner Ratnoff in England, and that petitioner have leave to serve such order out of England and Wales.
It is the contention of the petitioners that the reopening of the English proceedings; the personal service of the process of the English court upon the respondent and the order giving her 21 days thereafter in which to appear and move with respect to such proceedings; and her failure to do so for a month and two weeks after the time of such personal service, has eliminated the basis upon which this court made its original determination. It is petitioners’ further contention that May v. Anderson (345 U. S. 528, supra) relied upon by this court in its original opinion, has no application in the situation where the foreign court has personal jurisdiction over both parents.
The Appellate Division, First Department, in Matter of Lang v. Lang (9 AD 2d 401, 405, affd. 7 N Y 2d 1029) stated:
“ In determining what should be done in the interests of the children, there are some elemental rules. * * * The doctrine of comity has often been recognized as qualifiedly applicable to custodial decrees. When comity is applied it rests primarily on domiciliary jurisdiction, custody being, in some respects a function of status which is controlled by the law of the domicile [citing cases and texts]. In applying comity it is sometimes required that distinction be made between domicile at the time of the foreign judicial determination and domicile when the matter arises in the domestic court. In this ease the domicile of <the children was never changed by reason of the mother’s abduction but remained in Switzerland with that of the father, the legal custodian.” (Emphasis added.) “ A child’s domicile is that of the parent to whose custody it has legally been given [citing cases and texts]. Here, the father has custody under the Swiss decree and both children# as well as their *881 legal custodian, are still domiciliarles of Switzerland, despite their onetime presence here by reason of the mother’s abduction.”
The Appellate Division, First Department, went on to say (p. 406): “ True, in matters of custody the courts are not obligated always to apply the doctrine of comity. Indeed, they are not required always to apply the more stringent constitutional principle based upon the extension of full faith and credit. In New York, it is settled that the mere physical presence of a child in the State is sufficient to confer on its courts power to make effective disposition for the child’s welfare, including the determination of custody. . This, indeed, has been described as a paramount jurisdiction. [Cases cited.] Thus, it has been expressly held that the full faith and credit clause in the Federal Constitution does not apply to custody decrees and that the responsibility of the New York courts as parens patriae transcends the rule of comity [case cited]. The rule is the same in most other jurisdictions [text cited]. But the existence of power in the court to ignore the Swiss decree and depart from principles of comity does not mean that the power should be exercised in the absence of extraordinary circumstances demonstrating that otherwise the children will suffer [cases cited]. In the Wicks case, after citing and quoting from the Finlay case, the Texas court cogently said [pages cited]: ‘ Ordinarily the courts of the domiciliary state, are in a better position to pass intelligently on the matter of the child’s welfare, and good order frequently requires that they do so to the exclusion of courts of other states in which the child is temporarily resident.’ And the crux of the matter here is that only by withholding the power may the interests of the children be served.” (Emphasis added.)
It is the opinion of this court under the circumstances of this case, that only by withholding the power may the best interest of the infant in this case be served.
There are conflicting affidavits as to the fitness of both parents to have the custody of the infant herein, but there can be no doubt that the English court is in a better position to determine which of the parents, if either, is most suitable for custody and control of the child, and certainly is in the best position to see that the child is financially supported by the petitioner, the father of the child. It is admitted that the child is now receiving medical attention at the expense of the Columbia County Social Services Department, while it is evident that the father is financially capable of fully supporting the child. Financial *882 support should not be a controlling factor in a custody dispute, but it certainly must be considered in the best interest of the child. There being no overriding factor present in this case, the court is of the opinion that financial support of the child must be considered.
As stated in Matter of Lang v. Lang (supra, pp. 407-408) quoting Finlay v. Finlay (240 N. Y. 429, 431): “ ‘ “ The residence of the child may not be used as a pretense for the adjudication of the status of parents whose domicile is elsewhere, nor for the definition of parental rights dependent upon status. * * * Parents so situated must settle their controversies at home. Our courts will hold aloof when intervention is unnecessary for the welfare of the child.” ’ ”
The relief requested by the petition is therefore granted.